## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

NAMBE, LLC,

      Plaintiff,

v.                                        Case No. 16-cv-241 SCY/KBM

LENOX CORPORATION,

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Dismiss the Complaint or, in the Alternative, Transfer this Action to the District of New Jersey. ECF No. 5. In this Motion, Defendant contends that Plaintiff's claims for breach of contract, breach of implied covenant of good faith and fair dealing, and prima facie tort should be dismissed under Fed.R.Civ.P. 12(b)(6).  Defendant further contends that in the event that Plaintiff's complaint is not dismissed in its entirety, this Court should transfer the case to the United States District Court for the District of New Jersey. Because the Court agrees with Defendant that the present lawsuit should be transferred to the District of New Jersey, the Court GRANTS Defendant's Motion to the extent it requests that relief. The Court will not consider Defendant's remaining arguments.

## I.       BACKGROUND

Plaintiff Nambe alleges that it is a family-owned company headquartered in Santa Fe, New Mexico, which produces a variety of houseware products. ECF No. 1-1 at 1.  In 2014, Nambe entered into preliminary negotiations with Defendant Lenox regarding a potential business relationship between the companies.  ECF No. 1-1 at 2. Nambe alleges that in order to facilitate negotiations between the parties, Nambe agreed to disclose information regarding its

organization and business activities in New Mexico, retail sales, and future projections. ECF No. 1-1 at 4. Due to the nature of these disclosures, Nambe proposed that the parties enter into a confidentiality agreement to protect others from learning of the potential transaction. ECF No. 1-1 at 2-3.  Nambe alleges that its intention in keeping this information confidential was to protect its reputation with customers and maintain the confidence of its employees. ECF No. 1-1 at 3-4. More specifically, Nambe alleges that it wished to protect its reputation in the industry as a "unique, family owned business" and ensure that employees would not become concerned about the stability of their employment which could compromise their productivity. ECF No. 1-1 at 4.

In February 2014, the parties executed the confidentiality agreement. ECF No. 1-1 at 3. In relevant part, the agreement provided that:

> The Confidential Information will be used solely for the purpose of evaluating the Possible Transaction by [Lenox] and, unless and until the Possible Transaction has been consummated, [Lenox] shall exercise all reasonable precautions to safeguard the confidentiality of the Confidential Information it has received. Moreover, the fact that NAMBE is considering the Possible Transaction is Confidential Information.

ECF No. 1-1 at 3.

According to allegations in a lawsuit subsequently filed by Lenox in New Jersey, in August 2014, Nambe alerted Lenox that it was taking itself off the market in order to improve its value and re-market itself at a later date. ECF No. 6-1 at 10.  Lenox alleged, however, that less than two weeks after Nambe decided not to further pursue the transaction, its Chief Legal Officer, William Robedee, who had represented Lenox during negotiations with Nambe, resigned from his position with Lenox to become the President and Chief Executive Officer of Nambe. ECF No. 6-1.  Lenox further alleged that Robedee hired Louis Scala, a former employee of Lenox, to join him at Nambe.  ECF No. 6-1. Lenox alleged that within days of the failed negotiations between Nambe and Lenox, while Robedee was still acting as Lenox's Chief Legal

Officer, he personally recommended that Scala's separation agreement with Lenox not include a non-compete clause, thereby permitting Robedee to hire Scala once he became the CEO of Nambe. ECF No. 6-1.

After Lenox filed suit in New Jersey against Robedee and Scala, Nambe brought the present suit in New Mexico against Lenox alleging that statements in Lenox's New Jersey complaint violated the confidentiality agreement. ECF No. 1-1.  Specifically, Nambe highlights three allegations by Lenox in its complaint that Nambe contends violated the confidentiality agreement.  First, Lenox alleged:

> In or about February 2014, a financial and business advisor of Nambe, proposed that Lenox and Nambe enter into a Confidentiality Agreement pertaining to information to be submitted to Lenox for the purpose of evaluating a proposed acquisition of Nambe by Lenox.

ECF Nos. 1-1 at 5; 6-1. Second, Lenox alleged that:

> On August 5, 2014, a meeting was held in New York City among Nambe's representatives and [Lenox's CEO] and Robedee to discuss a possible transaction[.]

ECF No. 1-1 at 5; 6-1. Third Lenox alleged that:

> On August 25, 2014, less than two weeks after Robedee's request for all confidential information on Nambe, [Lenox's CEO] received an email from Nambe stating that its owners had decided to take the business off the market to improve its value and re-market it in a few years.

ECF No. 1-1 at 5; 6-1.  Nambe alleges that as a result of Lenox's inclusion of this information in its complaint, Nambe was forced to expend significant time and effort repairing its relationships with its customers and employees. ECF No. 1-1.

Nambe further alleges that Lennox continued to engage in public actions directed toward harming Nambe's reputation after filing its lawsuit and disclosing information regarding the possible acquisition.  ECF No. 1-1 at 6. Nambe alleges that in March 2015, while Nambe

representatives, including Robedee and Scala, were attending the International Housewares Association trade show, Lenox utilized a process server "dressed in quasi-police like uniform" to serve Robedee and Scala at Nambe's booth. ECF No. 1-1 at 6-8. Nambe alleges that the process server "slammed" the summons and complaint on Nambe's table and stated "[y]ou have been served" in earshot of Nambe customers and potential customers.  ECF No. 1-1 at 8.  Nambe alleges that before Robedee was served at the trade show, his spouse had previously accepted service at their home and Robedee had contacted Lenox's counsel to confirm that he had been served. ECF No. 1-1 at 7.  Nambe alleges that these actions further injured its reputation with customers and other industry professionals.

## II.    DEFENDANT'S MOTION TO TRANSFER

Defendant argues that the Court should transfer this case to New Jersey pursuant to 28 U.S.C. § 1404(a).  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1998) (internal quotation marks and citation omitted).  While the statute "affords district courts the opportunity to look beyond a narrow or rigid set of considerations" in making their determination, *U.S. ex rel. Brown Minneapolis Tank Co. v. Kinley Const. Co.*, 816 F.Supp.2d 1139, 1149 (D.N.M. 2011), the Tenth Circuit has listed the following factors as considerations a district court may take into account in deciding a motion to transfer:

> The plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to ensure attendance of

4

> witnesses; the cost of making the necessary proof; questions as to the
> enforceability of a judgment if one is obtained; relative advantages and obstacles
> to a fair trial; difficulties that may arise from congested dockets; the possibility of
> the existence of questions arising in the area of conflict of laws; the advantage of
> having a local court determine questions of local law; and, all other considerations
> of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).   "The

party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the

existing forum is inconvenient."  *Id.* at 1515.

Defendant focuses on six factors it contends weigh in favor of transferring the present

case. First, Defendant argues that Plaintiff's choice of forum in this case should be afforded little

weight because Plaintiff's "home forum" is irrelevant to the present dispute. ECF No. 6 at 18.

Second, Defendant contends that the "first to file" rule requires that the Court give deference to

Defendant's previous filing of its lawsuit in New Jersey. ECF No. 6 at 20. Third, Defendant

argues that the convenience of the witnesses and parties favors New Jersey as the appropriate

forum for this suit.  ECF No. 6 at 21. Fourth, Defendant contends that the expense to the parties

of litigating the case in New Mexico weighs in favor of transfer.  Fifth, Defendant contends that

the conflict of laws factor is neutral because Indiana law applies to the contractual claims and

whether New Mexico or New Jersey law applies to the prima facie tort claim is irrelevant

because the law in the two jurisdictions is similar. Finally, Defendant argues that the interests of

justice are best served by the transfer to New Jersey because it would be a waste of judicial

resources to allow this case to proceed in New Mexico when the New Jersey District Court is

already familiar with the underlying facts and parties in this suit. ECF No. 6 at 23. The Court

will consider these contentions in turn.

### A.  Choice of Forum

"Unless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).  However, "the plaintiff's choice of forum receives less deference…if the plaintiff does not reside in the district" or where "the facts giving rise to the lawsuit have no material relation or significant connection to the plaintiff's chosen forum." *Employers Mutual Casualty Company v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010).

The parties disagree as to the weight that Plaintiff's choice of forum should be given in this case. In its Complaint, Nambe alleges that it is a limited liability company organized and existing under the laws of the State of New Mexico.  Nambe further alleges that it is headquartered in Santa Fe, New Mexico, and operates a warehouse, distributing facility and six retail stores within New Mexico that employ approximately ninety individuals.  Plaintiff also contends that New Mexico has a significant connection to the lawsuit due to Nambe's presence in the State and because Nambe's upper management spent considerable time and effort assuring New Mexico employees that their jobs were secure.

Defendant, on the other hand, emphasizes New Mexico's allegedly tangential connection to the present litigation. Defendant points out that H. Kent Howard, a member of Nambe's Board of Directors, testified in his deposition that he understands Nambe's headquarters to now be in New Jersey because that is where the CEO (Robedee) resides and conducts business. ECF No. 6-3. Defendant further contends that New Mexico has no material connection to the facts giving rise to the lawsuit filed in New Mexico. On this point, Defendant stresses that the underlying event giving rise to the New Mexico lawsuit occurred in New Jersey when Lenox filed its complaint there. Further, the negotiations that led to the confidentiality agreement at issue

occurred between representatives for Nambe in Indiana and Illinois and representatives for Lenox in Pennsylvania. Finally, as to Nambe's allegations regarding Lenox's service of process, those actions occurred in New Jersey and Illinois.

At the outset, the Court recognizes that Nambe is organized under the laws of New Mexico and has a significant presence in the State. However, Nambe's "upper management", including all individuals who negotiated the confidentiality agreement and the potential transaction with Lenox, reside outside New Mexico – either in New Jersey or in states that are closer to New Jersey than New Mexico. Similarly, none of the participants in these negotiations on behalf of Lenox reside in New Mexico. Indeed, Lenox's representative in the negotiations, William Robedee, who is now Nambe's CEO, resides in New Jersey. Accordingly, while the Court weighs Nambe's choice of forum in its favor, it places the import of this factor on equal footing with the remaining factors rather than giving it greater weight. *See Bartile Roofs*, 618 F.3d at 1168 (stating that less deference should be afforded a plaintiff's choice of forum where the facts giving rise to lawsuit have no material or significant connection to the chosen forum).

**B. First to File**

Defendant argues that the "first-to-file" rule weighs in favor of transferring this action. ECF No. 6 at 20. This rule provides that where "essentially the same issues and litigants are involved in two substantially identical causes of action before federal courts in different districts," the "court where jurisdiction first attaches should make the determination of the appropriate venue to decide the case." *Ed Tobergte Associates, Inc. v. Zide Sport Shop of Ohio, Inc.*, 83 F.Supp.2d 1197, 1198 (D.Kan. 1999). The causes of action in the New Mexico and New Jersey cases, however, are not substantially identical. The New Jersey case involves allegations that two former Lenox employees breached their fiduciary duty to Lenox by seeking

7

employment with Nambe while simultaneously supposedly conducting arms-length negotiations with Nambe on behalf of Lenox.  Nambe is not a party in the New Jersey case.  In contrast, the New Mexico case involves allegations that after these employees had already left Lenox, Lenox breached a confidentiality agreement with Nambe.  The employees—Scala and Robedee—are not parties in the New Mexico case.  To be sure, overlap of facts and witnesses exist between the two cases. As set forth below in the judicial economy section of this Order, this overlap matters. The overlap, however, is not so significant that the cases are substantially identical and, therefore, the "first to file" rule does not apply.

### C.  Convenience of Witnesses and Parties

"The convenience of witnesses is the most important factor in deciding a motion under §1404(a)." *Bartile Roofs, Inc.*, 618 F.3d at 1169 (internal quotation marks and citation omitted). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (internal quotation marks and alterations omitted).

Defendant contends that none of the witnesses with knowledge regarding the negotiation of the confidentiality agreement or Lenox's lawsuit against Robedee and Scala reside in New Mexico.  Further, Defendant highlights the fact that both Robedee and Scala reside in New Jersey. Defendant also contends that although Nambe's key remaining witnesses—Howard and Hillenbrand—reside in Indiana and Illinois, they have already entered appearances in Lenox's New Jersey lawsuit.  Finally, Defendant contends that New Jersey is more convenient for Lenox

and its key witnesses because it is headquartered in Bristol, Pennsylvania, not far from the New Jersey border.  ECF No. 6 at 21-22.

Plaintiff, on the other hand, contends that while Robedee and Scala reside in New Jersey, they are Nambe witnesses and have expressed no inability to take part in the New Mexico proceedings.  Plaintiff further contends that Defendant fails to address Nambe's witnesses who reside in New Mexico and would testify about the injury to Nambe in New Mexico.  This includes one former employee of Nambe who is expected to testify that he left the company once details of the potential transaction came to light out of concern for the security of his future employment.

For the reasons stated by Defendant, the Court agrees that the convenience of the witnesses weighs in favor of a New Jersey forum.  First, one of the most central witnesses to this case—Robedee—lives in New Jersey.  As noted above, Robedee negotiated the confidentiality agreement on behalf of Lenox and is currently employed as Nambe's CEO. While the parties dispute the location of Nambe's headquarters, the Court finds that, at the least, Nambe holds an office in New Jersey from which its CEO conducts business. As for other key Nambe witnesses such as Howard and Hillenbrand, their residence in Illinois and Indiana, which are closer to New Jersey than New Mexico, is a factor that slightly weighs in favor of a New Jersey forum.  With regard to testimony about the impact disclosure of Nambe's negotiations with Lenox had on Nambe's business, these same Nambe executives are likely to be the primary witnesses on that point.  *See* ECF No. 1-1 at ¶¶ 56-57 (alleging that "Nambe's upper management spent valuable time and effort" repairing harm caused with customers and employees). Granted, at trial Nambe might present some damage testimony from New Mexico witnesses.  These witnesses, however, would not be necessary unless this case proceeds to trial and Lenox is found to be liable at trial.

And, even in this situation, the majority of Nambe's case would be presented by witnesses located in, or closer, to New Jersey than New Mexico.

On Lenox's side, its key witness, CEO Peter Cameron, splits time between Lenox's headquarters in Bristol, Pennsylvania and Boston, Massachusetts.  Given either location's proximity to New Jersey, a New Jersey forum presents a largely more convenient forum for the parties and their witnesses than New Mexico. In sum, the vast majority of key witnesses in this case either live in New Jersey or are positioned close to this forum. *See Terra Partners v. AG Acceptance Corp.*, No. 14-1112, 2015 WL 4567257, *5 ("The availability and convenience of key witnesses with material testimony may outweigh the convenience to numerous, but less important witnesses."). Accordingly, the Court weighs this factor in favor of transfer.

### D.    Expense of Parties/Cost of Making Proof

The Court finds that for many of same reasons that the convenience of the witnesses favors a New Jersey forum, this factor also weighs in favor of transfer.  As noted above, Robedee—Nambe's CEO and the person who represented Lenox during negotiations for the confidentiality agreement—resides in New Jersey. Furthermore, as Nambe's other key witnesses, Howard and Hillenbrand, are already participating in Lenox's New Jersey lawsuit, maintaining a separate but overlapping lawsuit in New Mexico would be inefficient and create an unnecessary expense for Nambe (albeit one they are willing to pay). As for Lenox, it would clearly create less expense to litigate this case in its neighboring state and the forum where its lawsuit against Robedee and Scala is currently progressing.

As above, the Court finds that the materiality of the testimony of the few potential Nambe witnesses who reside in New Mexico does not outweigh the materiality of the testimony of the central witnesses to this case who currently reside in or closer to New Jersey. Thus, although a

few Nambe witnesses may be required to travel from New Mexico to attend proceedings in New Jersey, the expense caused by such travel would be far outmatched by the expense of the key witnesses in this case travelling from or near New Jersey.  Accordingly, the Court weighs this factor is favor of transfer.

### E.  Conflict of Laws

"In a diversity action, courts prefer the action to be adjudicated by a court sitting in the state that provides the governing substantive law."  *Bartile Roofs*, 618 F.3d at 1169.  In this case, two of Plaintiff's claims—breach of contract and breach of the implied covenant of good faith and fair dealing—are governed by Indiana law, as provided by the parties' choice of law provision in the contract.  As for Plaintiff's remaining claim for prima facie tort, Defendant contends that this factor is neutral in determining whether a transfer is appropriate because New Mexico and New Jersey prima facie tort law are substantially the same. ECF No. 6 at 23. Plaintiff similarly contends that this factor is entitled to less deference in diversity actions "because federal judges are qualified to apply state law." *Id.* Because the parties tend to agree that this factor is either neutral or entitled to little weight, the Court does not place any specific weight on this factor in determining whether transfer is appropriate.

### F.  Interests of Justice

"The 'interest of justice' analysis is separate from the convenience analysis and is concerned with judicial efficiency and the avoidance of conflicts between coordinate courts." *Safari Club International v. Jewell*, No. 15-930, 2016 WL 3574169, *3 (D.N.M. 2016). Accordingly, "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard to judicial economy[.]" *Quorum Health Resources, LLC v. Lexington Ins. Co.*, No. 11-374, 2012 WL 769744, *4 (D.N.M. March 7,

2012) (quoting *Jacob Joseph Sch. v. Province of Mendoza*, 342 F.Supp.2d 124, 130 (E.D.N.Y. 2004)).  "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result."  *Safari Club*, 2016 WL 3574169 at 3 (quoting *Research Automation, Inc. v. Schrader-Bridgeport Intern., Inc.*, 626 F.3d 973 (7th Cir. 2010)).[1]

Defendant contends that the interests of judicial economy will be served by transferring this case to New Jersey because the New Jersey Court is already familiar with the facts and issues underlying this case due to Lenox's pending New Jersey lawsuit against Robedee and Scala. Plaintiff, conversely, emphasizes the differences between the suits and contends that there is no guarantee that this case will be heard before the judge currently handling Lenox's New Jersey lawsuit. ECF No. 11 at 21-22.  Plaintiff also contends that Lenox's counsel in the New Jersey case could potentially be called as a witness in Plaintiff's suit against Lenox. ECF No. 11 at 22.

The Court finds that the substantial overlap between witnesses, facts, and issues in the present suit and Lenox's New Jersey lawsuit weigh in favor of transfer.  First, Nambe's lawsuit specifically arose from disclosures Lenox made in its Complaint in the New Jersey lawsuit. Furthermore, the key witnesses in this case are the same principle actors in Lenox's New Jersey lawsuit. As for Plaintiff's argument regarding the uncertainty that this case will be assigned to the same judge, the local rules of civil procedure for the District of New Jersey provide that

---

[1] As indicated in *Chrysler Credit Corp.*, assessing the "difficulties that may arise from congested dockets" is a relevant factor in determining the propriety of transferring under Section 1404(a). 928 F.2d at 1516.  The parties allude to this factor but present none of the relevant statistics useful for evaluating whether the relative caseloads in New Jersey and New Mexico would hamper the efficient resolution of this case. *See Bartile Roofs*, 618 F.3d at 1169 ("When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge.").  Instead, the parties' arguments on this point are generalized contentions regarding issues of judicial economy.  Accordingly, the Court will address these arguments in the judicial economy subsection.

where a civil action "grows out of the same transaction as any case already pending" counsel shall notify the court of this fact and "[w]henever possible, such action shall be assigned to the same Judge to whom the pending related action is assigned." N.J.L.Civ.R. 40.1(c). Given that Plaintiff's allegations relate directly to actions Lenox took in filing the currently pending New Jersey lawsuit, as well as the considerable overlap in parties and witnesses, the Court finds that it is highly probable that the District of New Jersey, pursuant to its local rules, would assign this case to the same Judge currently handling Lenox's suit against Robedee and Scala. Accordingly, the Court concludes that the interests of judicial economy would be served by transferring this case to a court familiar with the background facts, parties, and issues underlying the present lawsuit.

Nambe also contends that its lawsuit should not be transferred to New Jersey because Lenox's New Jersey counsel, Mr. Garland, may be called as a witness in the case. If the New Mexico case were to be consolidated with the New Jersey case, Nambe's argument would have more force, as Mr. Garland is not currently a witness in the New Jersey case. Transferring the New Mexico case to New Jersey so that these related cases can be before the same judge, however, is different than consolidating the cases.  If Mr. Garland testifies in the Nambe case, he will do so regardless of whether the trial takes place in New Mexico or New Jersey. And, because Mr. Garland is based out of New Jersey, the fact that Mr. Garland might be a witness works against Nambe's argument to keep the case in New Mexico as he is yet one more witness located in New Jersey.  Accordingly, Plaintiff's argument on this point does not detract from the Court's finding that the interests of judicial economy would be served by transferring this case to New Jersey.

### III.    CONCLUSION

Having reviewed the factors, the Court concludes that they weigh in favor of transfer. This case arises directly from Lenox's actions in allegedly disclosing confidential information when it filed its lawsuit against Robedee and Scala in New Jersey.  Transferring this case does not merely shift the inconvenience from one party to the other. *See Bartile Roofs*, 618 F.3d at 1167 ("Merely shifting the inconvenience from one side to the other…is not a permissible justification for a change of venue."). As stated above, many of the principle witnesses are located either in New Jersey or in closer proximity to New Jersey than New Mexico.  As for Nambe's contention that employees and former employees who live in New Mexico will testify regarding the negative impact of Lenox's disclosures on Nambe's workforce, the materiality of these employees' or former employees' testimony is outweighed by the materiality of testimony from the principle actors who reside in or near the New Jersey forum and were involved in negotiations between Lenox and Nambe and the disclosures at issue.  Furthermore, the proximity of these individuals to the New Jersey forum, including both Nambe and Lenox's upper management, would result in a more efficient and economical resolution of these proceedings for the parties.  Finally, given that Lenox's lawsuit has been proceeding in the New Jersey forum, the New Jersey Court's familiarity with the parties, witnesses, and issues in this case, transferring the case to New Jersey serves the interests of judicial economy.  All told, these factors outweigh Plaintiff's choice of forum and any inconvenience to Nambe's New Mexico-based witnesses. Accordingly, the Court concludes that the balance of factors weighs in favor of transferring this case.

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint, or in the Alternative, to Transfer this Action to the District of New Jersey (ECF No. 5) is GRANTED to the extent that Defendant moves for this case to transferred to the District of New Jersey.

**IT IS SO ORDERED.**


UNITED STATES MAGISTRATE JUDGE
Sitting by Consent